# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DIALLO R. MADISON,

                    Plaintiff,

       vs.

F. NESMITH, DR. SILVERBERG, and
GEORGE S. DUNCAN,

                 Defendants.

Civil Action No.
9:06-CV-1488 (NAM/DEP)

_____

APPEARANCES:

FOR PLAINTIFF:

DIALLO R. MADISON, *pro se*
94-A-7376
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

FOR DEFENDANTS:

HON. ANDREW M. CUOMO         CHRISTOPHER W. HALL, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This action is an outgrowth of a suit commenced elsewhere in January of 2002 by plaintiff Diallo Madison, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, initially complaining of various prison conditions including circumstances which caused him to slip and injure his right elbow at a corrections facility located outside of the district. Since its inception, the action has ripened into litigation addressing both the initial incident and medical treatment which he has since received at various prisons. The claims now before this court concern treatment provided to the plaintiff for his elbow injury between January and May of 2003, including a surgical procedure undertaken by defendant F. Nesmith, a physician's assistant ("PA"), to remove a benign nodule from Madison's right elbow. In his complaint, plaintiff asserts both civil rights violations pursuant to 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, adding pendent state common law assault and battery causes of action, and seeks recovery of substantial amounts of compensatory and punitive damages as relief.

Currently pending before the court is a motion brought by the three

2

named defendants requesting the entry of summary judgment dismissing plaintiff's complaint.  In their motion, defendants assert that plaintiff's claims are procedurally barred based upon his failure to properly exhaust available administrative remedies before commencing suit, and that in any event his constitutional and state law tort claims lack merit as a matter of law.  Additionally, defendants assert that there is no basis to find the existence of a conspiracy, and that any such claims are barred by the intra-corporate conspiracy doctrine in any event, and further argue that the record fails to disclose any personal involvement on the part of defendant Duncan sufficient to establish his liability for the constitutional violations alleged.

Having carefully reviewed the record now before the court, in light of the parties' arguments, I recommend that defendants' motion be granted, in part, and that his section 1983 claims be dismissed on the basis that no reasonable factfinder could conclude that he suffers from a serious medical condition and that defendants were deliberately indifferent to that medical condition.  Finding the existence of issues of fact regarding whether plaintiff effectively consented to surgical removal of his elbow nodule by a physician's assistant, however, I recommend against summary judgment with respect to plaintiff's state law tort causes of action, but further recommend that the court

decline to exercise supplemental jurisdiction over those claims.

I.   UNDERLINE_BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Amended Complaint (Dkt. No. 84).  While over time plaintiff has been incarcerated in various facilities throughout the DOCS system, during the period relevant to his claims in this matter he was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *Id.* ¶ 58; Nesmith Aff. (Dkt. Dkt. No. 98-2) ¶ 37; Silverberg Aff. (Dkt. No. 98-3) ¶ 32.

The circumstances which form the basis for plaintiff's claims in this action date back to October 16, 2001 when, while housed at the Fishkill Correctional Facility, he slipped and fell upon exiting a shower area, an incident which he attributes to the failure of prison officials to provide floor towels for use by inmates while taking in-cell showers.  Amended Complaint (Dkt. No. 84) ¶¶ 3-4.  As a result of that incident plaintiff injured his right elbow, as well as his back.  *Id.* ¶¶ 4-5.

---

[1] In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

At the time of plaintiff's transfer into Great Meadow in January of 2003, plaintiff's elbow pain persisted. *See, e.g.,* Amended Complaint (Dkt. No. 84) ¶¶ 58-59. Plaintiff was seen by defendant Silverberg, a staff physician at Great Meadow, on January 28, 2003, complaining of a nodule or growth near his elbow. Silverberg Aff. (Dkt. No. 98-3) ¶¶ 1, 6-7. Visually confirming the existence of such a nodule, Dr. Silverberg diagnosed it as "benign", meaning that he considered it to be harmless. *Id.* ¶ 9.

In light of plaintiff's complaints of discomfort associated with the growth, Dr. Silverberg referred the plaintiff to Ted Nesmith, a PA employed by the DOCS and assigned to work at Great Meadow, for its removal through a minor surgical procedure. *Id.* ¶¶ 10-11; *see also* Nesmith Aff. (Dkt. No. 98-2) ¶¶ 6, 8. After securing plaintiff's written consent, PA Nesmith removed the nodule during the course of a minor surgical procedure of approximately forty-five minutes, performed pursuant to generally accepted medical practices and within the scope of his professional duties, in a room within the prison infirmary. Nesmith Aff. (Dkt. No. 98-2) ¶¶ 15-18 and Exh. 2.

Plaintiff was examined by a nurse at the Great Meadow prison infirmary on February 14, 2003, two days after the surgical procedure. Nesmith Aff. (Dkt. No. 98-2) ¶ 21. At that time the nurse removed the dressing on the

incision and gave plaintiff Tylenol, noting that there were no visible signs of infection. *Id.*

Plaintiff was seen by PA Nesmith on February 28, 2003 for a follow-up to the surgery. Nesmith Aff. (Dkt. No. 98-2) ¶ 22. At that time Nesmith removed the stitches from the incision, and reported that the area appeared to be "healing well". *Id.* Defendant Nesmith observed no bleeding, and plaintiff voiced no complaints at the time. *Id.* According to the plaintiff, the surgical wound healed within a few weeks, with no infection. Hall Aff. (Dkt. No. 98-4) Exh. 1 (Transcript of plaintiff's deposition, held on November 28, 2007) at pp. 92-93 (hereinafter "Plaintiff's Dep. Tr.").

At various intervals leading up to his transfer out of Great Meadow, plaintiff was subsequently seen by prison nurses, Dr. Silverberg, and PA Nesmith. Nesmith Aff. (Dkt. No. 98-2) ¶¶ 23-26; Silverberg Aff. (Dkt. No. 98-3) ¶¶ 22, 28, 30, 32. On various of those occasions some crusting and bleeding, both characterized by Dr. Silverberg as normal under the circumstances, were observed. Silverberg Aff. (Dkt. No. 98-3) ¶ 28. A pathology report analyzing the nodule removed by PA Nesmith from plaintiff's elbow was reviewed on March 25, 2003 by Dr. Silverberg, who found that it confirmed his initial diagnosis that the nodule was benign, noting that the

report identified the nodule as a "traumatic neuroma", meaning that it had potentially developed as a result of an injury or trauma to the nerve tissue in or near the right elbow.[2]  Silverberg Aff. (Dkt. No. 98-3) ¶ 26.

## II.   PROCEDURAL HISTORY

Over its seven year lifetime in three different courts, this case has developed a tortured procedural history, much of which is not relevant to defendants' motion.  The action was commenced on January 3, 2002 in the Southern District of New York.  Dkt. No. 1.  After conducting a routine review of plaintiff's complaint, then-Chief District Judge Michael Mukasey issued a decision on December 27, 2002 in which, *inter alia,* he ordered dismissal of certain of plaintiff's claims related to events occurring at the Auburn and Coxsackie Correctional Facilities, both located outside of the Southern District, and directed amendment of certain other claims set forth in Madison's complaint.  Dkt. No. 4.  An amended complaint was subsequently filed by the plaintiff in that court on or about March 3, 2003.  Dkt. No. 7.

On December 30, 2004, after denying an earlier dismissal motion filed by the defendants alleging plaintiff's failure to properly exhaust available

_____

[2]      During his deposition plaintiff acknowledged that the onset of the pain in his elbow coincided with his falling and hitting his elbow on a metal bench.  Plaintiff's Dep. Tr. at p. 102.  That incident occurred prior to defendant Nesmith's removal of the nodule.  *Id.*

administrative remedies before commencing suit, *see* Dkt. No. 32, District Judge Robert W. Sweet, also of the Southern District of New York, issued a decision in connection with a motion filed by the defendants for the entry of summary judgment, dismissing certain of plaintiff's claims and directing a transfer of the action to the Western District of New York, based upon the fact that the defendants remaining in the action all appeared to reside in Chemung County, and within that district. Dkt. No. 45.

On July 19, 2006, acting upon a report and recommendation issued by Magistrate Judge Marian Payson, District Judge Charles J. Siragusa, of the Western District of New York, severed out certain of the claims sought to be added by the plaintiff in an amended complaint and ordered them transferred to the Northern District of New York, based upon the fact that they involved claims accruing in this district. Dkt. No. 81. The file related to those claims was subsequently transferred to this district electronically on December 13, 2006. Dkt. No. 82. Included among the claims transferred to this district were causes of action for deliberate indifference to plaintiff's medical needs, in violation of the Eighth Amendment to the United States Constitution, and assault and battery, each asserted against the three named defendants in the action, including Physician's Assistant Nesmith, DOCS Physician Dr.

Silverberg, and Great Meadow Superintendent George S. Duncan. Dkt. No. 81 at pp. 4-5.

Following the joinder of issue and completion of pretrial discovery, defendants moved on April 30, 2008 for the entry of summary judgment dismissing plaintiff's claims. In their motion, defendants assert that plaintiff's claims are procedurally barred based upon his failure to properly exhaust administrative remedies before commencing the action, and that his Eighth Amendment claims are lacking in merit. Defendants also assert that the record discloses no basis to find liability on the part of Superintendent Duncan for the constitutional deprivations alleged, that plaintiff's conspiracy claims are barred by the intra-corporate conspiracy doctrine and in any event are legally deficient, and that plaintiff's pendent claims of assault and battery are similarly lacking in merit. Plaintiff has since responded in opposition to defendants' motion, asserting that he did properly exhaust administrative remedies and that there are genuine, triable issues of material fact which preclude the entry of summary judgment against him. Dkt. No. 106. Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.

R. Civ. P. 7 72(b).

III.    <u>DISCUSSION</u>

     A.    <u>Summary Judgment Standard</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment

motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

A moving party seeking the entry of summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could

rule in favor of the non-moving party.  *See Building Trades Employers' Educ.*

*Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted);

*see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment

is appropriate only when "there can be but one reasonable conclusion as to

the verdict").

> B.   Exhaustion of Remedies

_____At some point during March of 2003 plaintiff filed a written grievance,

designated as no. 34,282-03, at Great Meadow complaining of the failure of

prison officials to refer him to an outside orthopedic consultant.[3]  Hall Aff.

(Dkt. No. 98-4) Exh. 2.  Plaintiff's grievance does not reference any names,

including the three defendants in this action, nor does it purport to complain

of the fact that PA Nesmith performed the surgical procedure on his elbow, or

that his consent to undergoing the surgery was either not given or given

under false pretenses.  *Id.*  Plaintiff's grievance was denied on March 27,

2003, and that denial was upheld on May 14, 2003 on appeal to the Central

---

[3]        There is some discrepancy as to the date upon which that grievance was filed.  In his amended complaint, plaintiff asserts that it was submitted on February 16, 2003.  *See* Amended Complaint (Dkt. No. 84) ¶ 69.  It appears more likely, however, that it was not filed until later, since it is dated March 7, 2003, and on its face reflects that it was received by the Inmate Grievance Review Committee on March 12, 2003.  *See* Hall Aff. (Dkt. No. 98-4) Exh. 2.  It is not necessary to resolve this discrepancy, however, since it is not outcome determinative.

Office Review Committee ("CORC").  Amended Complaint (Dkt. No. 84) ¶ 69.

Defendants maintain that because plaintiff's grievance did not name any of

them specifically and did not address the matters now at issue, it does not

satisfy the controlling exhaustion requirement.  Plaintiff disagrees, asserting

that at the time his grievance was filed, in his estimation, the regulations

governing the DOCS Inmate Grievance Program were "manifestly unclear"

regarding medical complaints.  Plaintiff's Memorandum (Dkt. No. 106-2) at

pp. 12-13.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality

of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988

(2002), Congress altered the inmate litigation landscape considerably

through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"),

Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on

the ability of prisoners to maintain federal civil rights actions.  An integral

feature of the PLRA is a revitalized exhaustion of remedies provision which

requires that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

New York prison inmates are subject to a three step Inmate Grievance Program ("IGP") established by the DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)). Ordinarily, absent the finding of a basis to excuse non-

compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

The portion of defendants' motion addressing plaintiff's failure to name them in his grievance is easily dispensed with. There is no specific requirement in the IGP or otherwise that a grievance specifically name every person involved in the constitutional deprivation complained of, provided that prison officials are placed on notice, both substantively and procedurally, of the scope and extent of the prisoner's complaint. *Espinal v. Goord,* __ F.3d __, 2009 WL 224496, at *7 (2d Cir. 2009).

The more difficult question concerns the actual scope of plaintiff's grievance, and whether in fact it did satisfy this meaningful requirement. Plaintiff's complaint in this action centers upon the surgical removal by PA Nesmith of the growth on his elbow. *See* Amended Complaint (Dkt. No. 84) ¶¶ 59-68. His grievance, while making reference to the surgery, requested that he be referred to an outside orthopedic specialist for examination. *See* Hall Aff. (Dkt. No. 98-4) Exh. 2. Nonetheless, while the matters complained

of in this action are not directly raised in plaintiff's grievance, they are at least intertwined with plaintiff's orthopedic consultant argument. Under these circumstances, particularly in light of my conclusion later that plaintiff's claims in any event lack merit, I recommend against dismissal of plaintiff's claims on this procedural basis.[4]

C.   Deliberate Medical Indifference

At the core of plaintiff's complaint in this action is the claim that through their actions, defendants were deliberately indifferent to the serious medical needs associated with his elbow condition. In their motion, defendants challenge the legal sufficiency of plaintiff's medical indifference cause of action.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable

---

[4]   *See* pp. 16-24, *post.*

16

prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

In their motion, defendants assert that as a matter of law, based upon the record now before the court, no reasonable factfinder could conclude either that plaintiff suffered from a serious medical condition of constitutional proportions while at Great Meadow, or that defendants were subjectively indifferent to his condition.

## 1. Serious Medical Condition

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'". *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995). A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted). A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley*, 219 F.3d 132,

136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).

Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

_____The condition forming the basis for plaintiff's Eighth Amendment claim relates to a nodule, or growth, on his right elbow. When the growth was tested, following its removal, the pathology report reflected that it was benign, or harmless, confirming an earlier diagnosis to that effect by Dr. Silverberg. Silverberg Aff. (Dkt. No. 98-3) ¶ 26; Nesmith Aff. (Dkt. No. 98-2) ¶ 20 and Exh. 3. While plaintiff apparently contends that the elbow condition exposed him to such excruciating pain as to qualify as serious for constitutional purposes, in his deposition he was not even able to identify the nodule as the source of his pain. *See* Plaintiff's Dep. Tr. at 104-05. During his testimony, for example, plaintiff admitted experiencing pain developed after he fell and struck his elbow on a metal bench. *Id.* at 102. He also testified that following

19

the removal of the growth, the pain returned.  *Id.* at 101.  Over time, plaintiff's medical records reveal, he was able to withstand the pain through use of Ibuprofen, an over-the-counter pain medication.  *Id.* at 99.  Under these circumstances no reasonable factfinder could conclude that plaintiff's nodule, which was surgically removed through a cosmetic procedure and was determined to be benign, constituted a serious medical condition sufficient to trigger the protections of the Eighth Amendment.  *See White v. Hampton*, No. 1:04CV00051, 2005 WL 1828749, at *6 (E.D. Mo. Aug. 1, 2005) (finding that growth in plaintiff's neck, which was consistently diagnosed as harmless, did not qualify as a serious medical need); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 736 (D.N.J. 2004) (finding that benign growth in plaintiff's nasal cavity was not a serious medical condition).

### 2.    Deliberate Indifference

Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979); *Waldo*, 1998

WL 713809, at *2 (same).

It should be noted that the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment" and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).

The record also fails to reveal the necessary subjective, deliberate indifference on the part of the defendants to support an Eighth Amendment claim. Indeed, there is no evidence in the record that one of the defendants, Great Meadow Superintendent Duncan, was even aware of plaintiff's condition. In his affidavit Dr. Silverberg notes that as the superintendent, Duncan "had absolutely no personal involvement in plaintiff's medical care." Silverberg Aff. (Dkt. No. 98-3) ¶ 35. Moreover, at his deposition plaintiff conceded that he lacked evidence of any personal involvement on the part of Superintendent Duncan in the medical treatment for the growth near his right elbow, instead stating that Duncan was sued based upon his responsibility

for policies at the facility concerning medical treatment.  Plaintiff's Dep. Tr. at 66-69.

It is well-established that personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, __ F.3d __, 2009 WL 189901, at *5

(2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").  Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Neither plaintiff's complaint nor his responsive papers identify any particular policy or custom known to defendant Duncan and under which a constitutional deprivation occurred.  Instead, plaintiff's quarrel appears to be with Superintendent Duncan's supervisory position and his inherent ability, in that position, to establish policy.  Such a circumstance, without more, is

insufficient to give rise to supervisory liability. *Richardson,* 347 F.3d at 435 ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (citations omitted); *see also*, *e.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).

Turning next to Dr. Silverberg, the record once against discloses no basis to conclude that he was deliberately indifferent to plaintiff's elbow condition. After discerning that the plaintiff's elbow growth did not present a serious condition, rather than ignoring it, Dr. Silverberg referred plaintiff to PA Nesmith who, the record discloses, was fully qualified to perform the procedure for removal. Silverberg Aff. (Dkt. No. 98-3) ¶¶ 18-19. After the removal the growth was studied to confirm its benign character. *Id.* at ¶¶ 25-27. Following the surgery plaintiff's situation was regularly monitored, including by Dr. Silverberg, PA Nesmith, and staff nurses at Great Meadow. Nesmith Aff. (Dkt. No. 98-2) ¶¶ 23-26; Silverberg Aff. (Dkt. No. 98-3) ¶¶ 22, 28, 30, 32.

In the end, plaintiff's complaint regarding Dr. Silverberg boils down to a

disagreement over the selected course of treatment, and specifically, the denial of his request to be seen by an outside orthopedic specialist.[5] Such a disagreement over the course of treatment, however, is insufficient to establish an Eighth Amendment deliberate indifference claim. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly* , 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).

Plaintiff's allegations regarding the actions of PA Nesmith similarly fail to demonstrate any indifference on his part. After the matter was referred to him, PA Nesmith surgically removed plaintiff's growth, performing a minor surgical procedure similar to many others performed over his years of experience both in the military and as a civilian medical personnel. Nesmith Aff. (Dkt. No. 98-2) ¶¶ 31-33. Once again, following his surgery, medical personnel at Great Meadow, including defendant Nesmith, regularly

------

[5] Defendants argue that had plaintiff been referred by Dr. Silverberg to an outside surgeon for removal of the growth, as plaintiff now contends should have been done, in all likelihood that request would have been denied since it entailed surgery considered as cosmetic, rather than "medically necessary". *See* Silverberg Aff. (Dkt. No. 98-3) ¶ 21. Plaintiff counters with the assertion that this is not true, and that in point of fact treatment of the nodule, with possible removal, by an outside orthopedic specialist was approved on three prior occasions, including on October 10, 2002 by Dr. Guzman and again on April 23, 2002, by Dr. Guzman, and additionally that this course was recommended on June 20, 2002 by the inmate grievance resolution committee ("IGRC"). Madison Aff. (Dkt. No. 106) ¶ 13.

monitored defendants' progress. *Id.* ¶¶ 23-26; Silverberg Aff. (Dkt. No. 98-3) ¶¶ 22, 28, 30, 32. Having carefully surveyed the record, I am unable to discern any evidence from which a reasonable factfinder could conclude that PA Nesmith was deliberately indifferent to plaintiff's elbow condition.

Because plaintiff has failed to adduce evidence establishing either the existence of a serious medical condition or any subjective indifference to that condition on the part of any of the three defendants in the action, I recommend dismissal of his Eighth Amendment claims.

D.    Conspiracy

In his amended complaint, while not specifically setting forth a cause of action to this effect, plaintiff suggests the existence of a conspiracy to preclude him from being referred to an orthopedic specialist regarding his elbow condition. *See, e.g.,* Amended Complaint (Dkt. No. 84) ¶¶ 66, 71, 79; *see also* Plaintiff's Dep. Tr. at pp. 38-39, 44, 46-49, 69. Defendants maintain that if plaintiff's complaint, generously construed, is considered to include such a conspiracy claim, it is neither sufficiently stated nor supported by the record. Additionally, defendants assert that in any event such a claim is precluded by operation of the intra-agency conspiracy doctrine.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must

demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

Neither plaintiff's complaint nor the record before the court provides the identity of the parties to the alleged conspiracy, a showing of agreement or a "meeting of the minds", or any details as to the time and place of the conspiracy or its objective.  Such deficiencies are fatal to plaintiff's conspiracy claim.  *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999).  Because plaintiff has asserted claims of conspiracy in only vague and conclusory terms, and has failed to come forward, in the face of defendants' summary judgment motion, with evidence to support such a conspiracy claim, I recommend its dismissal as a matter of law.  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937, 111 S. Ct. 1399 (1991); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

Even if plaintiff's complaint and the record now before the court had

sufficiently established a basis upon which to find the existence of a

conspiracy to deprive him of civil rights sufficient to avoid summary judgment,

the conspiracy claim would nonetheless be precluded by the intra-corporate

conspiracy doctrine.  In a doctrine rooted in the conspiracy provision of

section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although

developed in the context of business entities, since inception has been

expanded to apply to business corporations and public entities as well, the

intra-corporate conspiracy doctrine provides that with exceptions not now

presented, an entity cannot conspire with one or more of its employees,

acting within the scope of employment, and thus a conspiracy claim

conceptually will not lie in such circumstances.  *See, e.g., Everson v. New*

*York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002); *Griffin-*

*Nolan v. Providence Washington Ins. Co.*, No. 5:05CV1453, 2005 WL

1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).  In this instance

plaintiff alleges that various unspecified individuals, all presumably employed

by the DOCS, conspired to deprive him of his civil rights.  Since those

conspiracy claims are asserted against officers, agents or employees of the

DOCS, each acting within the scope of his or her employment, they are

precluded by virtue of the intra-corporate conspiracy doctrine. *Little v. City of New York,* 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citations omitted).

###### E.    Assault and Battery

_____In the final point of their motion, defendants seek dismissal of plaintiff's pendent state common law assault and battery claims. As a basis for their motion, defendants note that plaintiff consented to PA Nesmith performing the surgery, thereby countering those potential claims.

Plaintiff's assault and battery claims hinge upon plaintiff's written agreement to undergo the surgery, and whether that represented a consent to the procedure as performed by PA Nesmith. *See Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 n.2, 769 N.Y.S.2d 184, 189 n.2 (2003); *see also* Amended Complaint (Dkt. No. 84) ¶¶ 70-72. If plaintiff is found to have given consent to the surgical procedure, then under New York law he is precluded from bringing a tort claim for assault or battery arising out of the operation. *See Jeffreys*, 1 N.Y.3d at 41 n.2, 769 N.Y.S.2d at 189 n.2; *see also Messina v. Matarasso*, 284 A.D.2d 32, 34-35, 729 N.Y.S.2d 4, 7 (1st Dep't 2001) (distinguishing between a claim that medical personnel failed to inform plaintiff of the risks of a procedure, or rendered medical care beyond the scope of her consent, which arises under theories of medical malpractice and

29

negligence, and a claim that the procedure was performed with no consent at all, which is an allegation of intentional conduct and arises under common law theories of assault and battery); *Rigie v. Goldman*, 148 A.D.2d 23, 28-29, 543 N.Y.S.2d 983, 986 (2d Dep't 1989). In contrast, if the consent given is found to have amounted to consent only to a doctor to perform the surgery, then such a claim may lie against PA Nesmith. *See Messina*, 284 A.D.2d at 34-35, 729 N.Y.S.2d at 7

The scope of the consent, and the circumstances under which it was given, are very much at issue in this case. While plaintiff apparently acknowledges having signed the consent form now in the record, it includes the notation "to Doctor" immediately following plaintiff's signature and DIN number. *See* Nesmith Aff. (Dkt. No. 98-2) Exh. 2. While PA Nesmith noticed the notation but "did not make anything of it", *see* Nesmith Aff. ¶ 15, plaintiff asserts that it signified that he was giving consent only to surgical removal of the nodule by a licensed doctor, as opposed to a physician's assistant. Amended Complaint (Dkt. No. 84) ¶ 62. Plaintiff testified that at the time his consent for the procedure was given, he was under the impression that Nesmith, who did not wear a name tag, was a doctor. *See* Hall Aff. (Dkt. No. 98-4) Exh. 1 (Transcript of plaintiff's deposition, held on

November 28, 2007) at pp. 47-48 (hereinafter "Plaintiff's Dep. Tr."); *see also* Amended Complaint (Dkt. No. 84) ¶ 63.

Under these circumstances there is a genuine issue of material fact, entailing a determination of whether plaintiff's consent was to having a doctor, as opposed to a physician's assistant, perform the surgery, which must be resolved before the question of consent, and consequently the legal sufficiency of a tort claim for assault and battery, can be determined, thus precluding the entry of summary judgment in connection with those remaining claims. *See Sola v. Swan*, 18 A.D.3d 363, 363, 794 N.Y.S.2d 902, 902 (1st Dep't 2005).

In this report I have recommended the entry of summary judgment dismissing all of plaintiff's federal claims. If the report is approved, the court will therefore be required to decide whether to utilize its discretion in favor of exercising supplemental jurisdiction under 28 U.S.C. § 1367 and entertain plaintiff's state law tort claims, or instead to dismiss them without prejudice. *See Purgess v. Sharrock*, 33 F.3d 134, 138-39 (2d Cir. 1994). In this instance, there being no compelling reason to adjudicate plaintiff's state law claims in the context of this proceeding, I recommend that the court decline to exercise supplemental jurisdiction and dismiss plaintiff's remaining tort

claims, without prejudice.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

In this action, plaintiff complains of medical care received for a benign growth removed from his right elbow through minor, cosmetic surgery performed by PA Nesmith at the direction of Dr. Silverberg, one of the staff physicians at Great Meadow.  The record neither discloses any basis upon which a reasonable factfinder could conclude that the condition was sufficiently serious to trigger the protections of the Eighth Amendment, nor does it contain any evidence that medical officials at Great Meadow, including defendants Silverberg and Nesmith, were deliberately indifferent to his condition.  The record also fails to disclose any basis for finding liability on the part of defendant Duncan, the Superintendent at Great Meadow, for any alleged indifference to plaintiff's medical needs.  Simply stated, plaintiff's complaint represents little more than his disappointment over the course of treatment, a matter not cognizable under the Eighth Amendment.

Turning to any potential cause of action for conspiracy which could be gleaned from plaintiff's complaint, such a claim is deficient in that it alleges the existence of a conspiracy in only vague and conclusory terms, without specifics, and in any event such a claim would be barred by the intra-

corporate conspiracy doctrine.

Lastly, addressing plaintiff's assault and battery causes of action, I find that genuine issues of fact exist precluding the entry of summary judgment, including whether plaintiff gave consent to the surgical removal by PA Nesmith of the growth, but recommend that the court decline to exercise supplemental jurisdiction over those claims in light of the fact that if this report is accepted, all federal claims will be dismissed as a result of my recommendation.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 98) be GRANTED, in part, and that plaintiff's Eighth Amendment deliberate medical indifference claim and conspiracy cause of action be DISMISSED, and that the court decline to exercise supplemental jurisdiction over plaintiff's state law tort claims of assault and battery, and instead dismiss those tort claims, without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated:     February 12, 2009
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge